McCouN, J.
 

 The first question presented by the bill of exceptions taken on the trial, relates to the admissibility of oral proof of the handwriting of a subscribing witness to a deed which the plaintiff offered in evidence. It appeared, that the subscribing witness (Hezekiah Sharp) was dead; his signature was proved; the person proving it testifying also that Sharp was *reputed to have been a commissioner of deeds of Albany county, and to have resided in Guil-derland. The deed was of land lying in Schoharie county, where the trial took place. By an indorsement on the deed, it purported to have been acknowledged by the grantors, before Sharp, as a commissioner; but there was no certificate of the clerk of Albany county of his being such commissioner. The defendant’s counsel, therefore, objected to the proof of Sharp’s signature as a subscribing witness, on the ground that the acknowledgment was the best evidence, and that the plaintiff was bound to authenticate the act of Sharp in that
 
 *35
 
 respect, by the official certificate of the clerk of Albany county. The objection was overruled, and, I think properly so.
 

 It was not necessary to the validity of the deed, that it should have been acknowledged, except so far as to render it effectual against the wife, to bar her right of dower; for every other purpose, the deed took effect from delivery, without any such acknowledgment. The statutory mode of proof, with a view of preserving the evidence of its due execution, and of recording the instrument, may be dispensed with. There is nothing to render it compulsory, nor has the statute declared that an acknowledgment shall be deemed the best evidence of its due execution; it has only made it the most convenient evidence, for the sake of grantees or purchasers. If a deed has not been acknowledged and certified, to entitle it to be recorded or used as evidence, under the statute, it may still be proved in the common-law method, by calling the subscribing witness to the stand, or by any secondary evidence which the rules of law admit of; none of which rules have been abrogated or entirely superseded.
 

 It is true, that the proof given on the trial, in this instance, was of a secondary character; but it does not appear, that it was in the plaintiff’s power to have furnished any better. From the mere rumor that Sharp had been a commissioner of deeds, even corroborated by what appeared to have been written on the deed by him, the court could not assume that the clerk of Albany county would be able to *certify to the fact of his being a commissioner, and, moreover, to his handwriting. "Without certainty as to both those particulars, how could it be said, that better evidence existed, and was in the plaintiff’s power to give, than was given by proof of the handwriting of the subscribing witness, he being dead ? Admitting such evidence was, therefore under the circumstances, no infringement
 
 *36
 
 of the rule which requires that the best evidence shall be given which it is in the party's power to give; and which only excludes secondary evidence, when it manifestly appears, that higher or better evidence is accessible and can be produced.
 

 We now come to the merits of the case, which depend upon the legal effect of the reservation in the deed, and its true meaning. The reservation is first found in the deed from Jacob Crounse and wife to Peter Empie, dated May 12th, 1830. The clause in question is both an exception and a reservation. The exception is of one acre and a half, included within the boundaries of the fifty-one acres, granted by the deed. Such is the effect, though the words used are the words of reservation, as follows: “they the parties of the first part do hereby reserve to themselves, and their heirs and assigns, one acre and a half of land out of the above-described premises at the south-east corner of lot No. 11, and on which the tannery is erected.” It is the proper office of an exception in a deed, as distinguished from a reservation, to exempt from the operation of the deed, a part of that which is granted, or comprised within the generality of its terms; it must be of such a part as is severable from the rest. (1 Preston’s Shep. Touch. 78; 21 Wend. 290; 4 Edw. Ch. 711.) This is the cáse with respect to the one acre and a half comprising the tannery.
 
 [1]
 

 Then follows, in the same clause of the deed, what is properly a reservation. For a reservation is always of something issuing, or coming, out of, the thing or property granted, and not a part "of the thing itself; and to be good, it must always be to the grantor, or party executing it, and not to a ^stranger to the deed. (1 Preston’s Shep. Touch. 80.) The words of this
 
 *37
 
 clause are — “And the parties of the first part do also reserve to themselves and their use a certain
 
 well
 
 and
 
 water-works,
 
 laid down for the purpose of supplying the tannery aforesaid with water.” This is, doubtless, good as a reservation, and it constitutes an easement in the land which was granted by the deed, in favor of the part excepted from its operation, viz., the one acre and a half, as [to which this right of water in the other land became appurtenant.
 

 Neither is there any doubt, that the subsequent conveyance by Peter Empie to Peter Empie, junior, of the property described in the deed from Crounse and wife, where the exception and reservation were first made, conveyed the property subject to the easement which had thereby been created, and that this last grantee, the defendant in this cause, who is now the appellant, is bound to the same observance, and stands in the same situation with regard to it, as the first grantee. ’ So too, the successive conveyances starting from Crounse and wife, and coming down to Borst, the plaintiff below, of the one acre and a half, carried with them the right to the water so reserved, as incident or appurtenant to this last-mentioned property.
 
 (Burr
 
 v.
 
 Mills,
 
 21 Wend. 290.) The parties before the court, therefore, occupy the positions of the respective parties to the deed containing the exception and reservation; and it is by the terms of that reservation, that the right between them must be determined, in the same manner as though they had been the original parties to it.
 

 The question is one of legal construction as to the extent of the reservation; whether it carries along with it, a general and indefinite use of the water, or a restricted use and application of it. This becomes the important question, because, the premises being no longer used as a tannery, the water is not required for that purpose, but is nevertheless claimed by the plaintiff for all ordinary domestic purposes.
 

 
 *38
 
 We have already seen, that the acre and a half of land was *properly a matter of exception in the deed, and not of reservation. Should we say, that the “ well and water-works,” as they are called, were also to be understood as the subject of exception, there would be a difficulty in sustaining the clause which should except them, on account of the repugnancy it would create, to the grant of the land itself. (1 Preston’s Shep. Touch. 88, n. 82.) But viewing the “well,” and the “water-works,” both artificial structures upon, or in, the land, and the use of which is reserved, as constituting an incorporeal hereditament (for such it is), then they were properly the subject of a reservation, and free from the objection of repugnancy. As an incorporeal right, or easement, it consists in the privilege of drawing the water from the fountain, or well, where it rises, and of conducting it, by means of the pipes laid in the ground, to the place where the tannery was erected.
 

 But is the use of the water restricted to the business or the purposes of such tannery? In determining this point, which is the important one in the case, we are to hold to a strict construction of the words of the reservation, as against the party whose words they are, and against him (the plaintiff in this cause) who stands in the place of that party; and if an advantage can be gained from any uncertainty or ambiguity in the words, the defendant is entitled to the benefit of it. (1 Prest. Shep. Touch. 88; 3 Johns. 387; 8 Id. 400.)
 
 [2]
 
 But I am at a loss to discover any uncertainty or ambiguity, either in the words or manner in which this reservation is expressed.
 

 The only words which are at all calculated to show that a special use was to be made of the water, are the words, “ for the purpose of supplying the tannery aforesaid with water.” But these words appear to have no connection with, nor reference to, the object or cause for
 
 *39
 
 making the reservation. In their immediate connection; they are only descriptive of what is reserved, viz., “a certain well and water-works laid down for the purpose,” &c. They are not. restrictive, therefore, of the use to be made of the water, and only serve to identify the subject of the reservation, while the reservation itself is expressed in the most general way, without any limit whatever as to the manner of using the water, or the future purpose to which it might be applied.
 
 [3]
 
 Taking the whole sentence together, as we find it in the deed, the words are plain and unambiguous. There is only one way by which a different meaning can be arrived at, and that is, by transposing some of the words, and breaking up their present connection. For instance, if, instead of leaving the words, “ for the purpose of supplying the tannery aforesaid with water,” at the end of the clause, where they merely define the object of the
 
 “
 
 well ” and the “ water-works,” we could advance them, so as to form a connection with the word “use,” we might then say, the water had been reserved for a special and particular purpose, as contended for on the part of the defendant below. But we are not at liberty to make so important an alteration as this, in the whole structure of the sentence. There is nothing in the case to warrant it, and we must be governed, therefore, by the words- as they stand in the deed; in which there is no restraint placed upon the use to be made of the water, when brought to the premises now owned by the plaintiff in the action.
 

 Judgment affirmed.
 

 [1]
 

 An exception in a conveyance severs the tiring excepted from me estate granted, and it does not pass by the deed, though words of reservation are used. Langdon
 
 v.
 
 New York, 6 Abb. N. C. 314; Bridger
 
 v.
 
 Pierson, 45 N. Y. 601.
 

 [2]
 

 See Duryea
 
 v.
 
 New York, 62 N. Y. 592.
 

 [3]
 

 See Olmsted
 
 v.
 
 Loomis, 9 N. Y. 423; Wakely
 
 v.
 
 Davidson, 26 Ibid 387; Comstock
 
 v.
 
 Johnson, 46 Ibid. 615.