LOCH SHELDRAKE ASSOCIATES, INC., Appellant, *v.* GUSSIE EVANS, Respondent.

Argued October 19, 1953; decided February 25, 1954.

*Lazarus I. Levine* for appellant. I. The privilege to draw water from Loch Sheldrake Lake is an easement appurtenant to the " Mill Lot " which can be used **only** on and in connection with the mill lot and cannot be extended to other parcels to which

it is not appurtenant. (*Saratoga State Waters Corp.* v. *Pratt,* 227 N. Y. 429; *McCullough* v. *Broad Exch. Co.,* 101 App. Div. 566; *Houghtaling* v. *Stoothoff,* 170 Misc. 773, 259 App. Div. 854; *Atlantic Mills of Rhode Is.* v. *New York Central R. R. Co.,* 221 App. Div. 386, 248 N. Y. 535.) II. The water easement reserved must be construed most strongly against defendant. Where doubt exists as to an easement for the use of water, the terms thereof will be construed as a limitation of quantity rather than as a restriction as to use. In any event, it may not be construed to authorize its use elsewhere than on the dominant tenement. (*French* v. *Carhart,* 1 N. Y. 96; *Blackman* v. *Striker,* 142 N. Y. 555; *McKinnon* v. *Bliss,* 21 N. Y. 206; *Wilson* v. *Ford,* 148 App. Div. 307; *Kitching* v. *Brown,* 180 N. Y. 414; *Craig* v. *Wells,* 11 N. Y. 315; *Wilson* v. *Ford,* 209 N. Y. 186.) III. The easement reserved is not exclusive. (*Borst* v. *Empie,* 5 N. Y. 33.) IV. The Appellate Division erred in reversing the order striking out the oral testimony as to the sale of water to Evans and in reinstating the same. (*Morgan* v. *Clark,* 25 Hun 189; *Leary* v. *Corwin,* 63 App. Div. 151; *Johnston* v. *Garvey,* 139 App. Div. 659, 201 N. Y. 548; *Sanford* v. *Ellithorp,* 95 N. Y. 48; *Swick* v. *Sears,* 1 Hill 17; *Vrooman* v. *King,* 36 N. Y. 477; *Williams* v. *Williams,* 142 N. Y. 156; *Tuscarora Club* v. *Brown,* 215 N. Y. 543.)

*F. Walter Bliss, Morris M. Oppenheim* and *Robert H. Ecker* for respondent. I. The rights of the respective parties must be determined solely in accordance with the provisions of the deed creating the right involved without resort to other deeds between different parties. (*Borst* v. *Empie,* 5 N. Y. 33; *Wilson* v. *Ford,* 209 N. Y. 186; *French* v. *Carhart,* 1 N. Y. 96; *Bridger* v. *Pierson,* 45 N. Y. 601; *Blackman* v. *Striker,* 142 N. Y. 555; *Craig* v. *Wells,* 11 N. Y. 315; *Fulton Co. Gas & Elec. Co.* v. *Hudson Riv. Tel. Co.,* 200 N. Y. 287; *Matter of New York State Labor Relations Bd.* v. *Holland Laundry,* 294 N. Y. 480.) II. Defendant has the right to impound the waters of the lake and to raise the same to high-water mark and to draw the same to low-water mark and use the water so withdrawn for any purpose, and, at the very least, she has the right to use such water in the quantity and manner that she is now using. (*Casler* v. *Shipman,* 35 N. Y. 533; *Hammond* v. *Antwerp Light & Power Co.,* 132 Misc. 786; *Comstock* v. *Johnson,* 46 N. Y. 615; *Hall* v. *Sterling Iron*

*& Ry. Co.*, 148 N. Y. 432.) III. Defendant has not exceeded her rights even if they constitute an easement appurtenant to the mill lot. (*O'Neil Supply Co.* v. *Petroleum Heat & Power Co.*, 280 N. Y. 50.) IV. There was no error in the reversal of the order of the trial court which struck out the oral testimony as to the sale of water by Divine to Evans at the time of the execution by Divine of the deed to Greenspan and others, and in the reinstatement thereof. (*French* v. *Carhart*, 1 N. Y. 96; *Bridger* v. *Pierson*, 45 N. Y. 601; *Blackman* v. *Striker*, 142 N. Y. 555.)

DESMOND, J. Our question is as to the meaning and effect of a reservation of water rights appertaining to a natural lake or pond known as Loch Sheldrake, in Sullivan County. Into a deed, which was given in 1919 to Greenspan and others (predecessors of plaintiff) by persons named Divine, and which conveyed to plaintiff's predecessors the whole of Loch Sheldrake and all its shores, there was written this language: " The parties of the first part hereby expressly except and reserve from this conveyance the right and privilege of damming the Sheldrake Lake or Pond and the outlet thereof, and of impounding the waters of said Lake or Pond and raising and drawing the same, together with the right of ingress and egress for the purpose of constructing, repairing and maintaining the said dam, or any part or portion thereof, and any and all conduits, raceways or pipes connected therewith or leading therefrom, which now exist or may hereafter be constructed. Such waters, however, shall not be drawn lower than the natural low water mark of the said Lake or Pond, and they shall not be raised higher than the normal or natural high water mark of said Pond, except that in case of unusual or extraordinary flood the same may be impounded for not to exceed forty-eight (48) hours at any one time."

All the rights thus reserved were, in 1927, conveyed, together with a so-called " mill lot " some distance south of Loch Sheldrake, by the Divines, to Isidore Evans, defendant's husband and predecessor in title. Beginning about 1915, and continuously since then, Mr. and Mrs. Evans have operated a large summer hotel on other lands owned by them, not acquired from the Divines, south of the mill lot, and about a half mile south

of Loch Sheldrake.  Many years before any of the deeds herein referred to were given, a dam had been built, in an outlet of Loch Sheldrake, by the Divines, and from it, through a pipe, water was carried by gravity to and for a mill formerly operated by the Divines on the " mill lot ", the water flowing, after such use, out of the mill's tailrace into a brook.  Undoubtedly, the Divines made the 1919 reservation of the Loch Sheldrake water rights, because of their then ownership and operation of the mill, but the reservation itself not only did not limit the water diversion to mill uses (it does not mention either the mill lot or the mill), but, on the contrary, the reservation (*supra*) embodied its own sole limitation, that is, that the dam be so used that the waters of the lake will be not drawn below low-water mark, or flooded above high-water mark.  Before and after the giving by the Divines of the 1919 deed first above mentioned, in which the water rights were reserved, the Divines at times sold, to Mr. and Mrs. Evans, for use at their hotel, water which had been carried by the outlet pipe to the mill lot. After the hotel owners had acquired the mill lot, the mill operations were (in about 1935) discontinued and, ever since, large quantities of water, drawn from the lake through the pipe to the old mill lot, have been piped further on into the hotel grounds for use at the hotel by defendant.

This suit was brought to obtain, for plaintiff, present owner of the lake and its shores, a declaratory judgment that defendant, by the water right reservation (*supra*), obtained no more than an easement which was appurtenant to the mill lot and which, as plaintiff asserts, permitted the use of the water for the now discontinued mill uses only.  Plaintiff demanded an injunction and money damages, also.  Defendant's opposing position, with which we will agree herein, is, as expressed in her answer, that by her succession to the water rights reserved in the 1919 deed, she " is entitled to the sole, absolute and free use of the waters of Loch Sheldrake between the low and high water marks for the benefit of her business and business properties."

The trial court came to the conclusion " that the reservation of the right and privilege to the use of the waters of Loch Sheldrake was a reservation in connection with and appurtenant to the Mill lot and for which property only the privilege reserved

was intended ", that defendant, succeeding to the rights of the Divines under that reservation, has no right to draw or use the lake waters except for mill or manufacturing uses on the mill lot, and that such rights as defendant has are not exclusive and do not exclude plaintiff from drawing and using the lake waters. The judgment, entered after trial, perpetually restrained defendant from drawing water other than for mill purposes.

On defendant's appeal to the Appellate Division, that court took a view of the case much more favorable to her. It concluded that the 1919 reservation was not limited, expressly or by implication, to use of the water for mill purposes, and that, while defendant's assertion of an exclusive right to use the water for any purpose whatsoever is perhaps too broad, " she has the right ", said the Appellate Division, " to use the water for the purposes the Divine family used the same for at the time they conveyed the lake to Greenspan and others " (282 App. Div. 51, 58), that is, at the time of the giving of the 1919 Divine–Greenspan deed containing the reservation.

Plaintiff alone appealed to this court, so we are powerless to modify the judgment, in defendant's favor. Despite holdings or seeming holdings by both courts below, and concessions or seeming concessions made at one time or another by both parties, that the reservation quoted in the first paragraph hereof from the 1919 deed, created an " easement appurtenant " to the mill lot only, we do not think that such was the result. We think that what the grantors Divine reserved, and what defendant's husband, and defendant, as his successor, got by subsequent grant from the Divines was not, in strictest terms, an easement at all, but an interest in the Loch Sheldrake lands, in the nature of a right to take a " profit " from those lands (see *Huntington* v. *Asher,* 96 N. Y. 604, 609; *De Witt* v. *Harvey,* 70 Mass. 486, 488, 489; *Goodrich* v. *Burbank,* 94 Mass. 459, 461; *French* v. *Morris,* 101 Mass. 68, 71). Such a right, not appurtenant to any other lands, may be used by its owner at any place or in any manner. As the Supreme Judicial Court of Massachusetts pointed out in *Goodrich* v. *Burbank* (*supra,* p. 462): " Rights of water duly granted by deed, not appurtenant to any particular parcel of land, may be used by the owner at any place or in any manner, so long as he does not interfere with or impair

the rights of others ''. In that same decision, the Massachusetts court recognized '' the right to take a certain quantity of water from a mill pond as a distinct and substantive subject of grant, without restriction as to its use at any designated place ''. (P. 462.) The New York cases above cited are in agreement with those statements of law.

The briefs here join in debate as to whether the Divine-Greenspan 1919 deed reservation created an '' easement appurtenant '' or an '' easement in gross ''. If we are to speak with strictest accuracy, there is no such thing as an '' easement in gross '' (although the phrase enjoys respectable usage, as in *Wilson* v. *Ford,* 209 N. Y. 186, 196, and other New York opinions), since an easement presupposes two distinct tenements, one dominant, the other servient (*Rangeley* v. *Midland Ry. Co.,* L. R. 3 Ch. 306, 309, Eng.; *Pierce* v. *Keator,* 70 N. Y. 419, 421). Obviously, the reservation we are construing was not the sort of mere personal, nonassignable, noninheritable privilege or license sometimes loosely described as an '' easement in gross '' (see *Saratoga State Waters Corp.* v. *Pratt,* 227 N. Y. 429, 443). What the Divines reserved in their deed to Greenspan and his associates was an absolute right to take profit or produce from the land conveyed, a right which was capable of being conveyed in gross and was so transferred by deed to defendant, and is now held, by defendant, without reference to use on any particular lands (*Huntington* v. *Asher, supra,* and see *Saratoga State Waters Corp.* v. *Pratt, supra,* pp. 443–445). Of course, such a right to take water from a distant source might, by other and appropriate kinds of verbiage, be so granted as to be appurtenant to specific lands separated from the source of supply (*Cady* v. *Springfield Water Works Co.,* 134 N. Y. 118, 121). But a reservation or grant in a deed, like every other contract '' must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law '' (Real Property Law, § 240, subd. 3). It is only when language used in a conveyance '' is susceptible of more than one interpretation '' that the courts will look into surrounding circumstances, the situation of the parties, etc. (*French* v. *Carhart,* 1 N. Y. 96, 102; *Clark* v. *Devoe,* 124 N. Y. 120,

124; *Wilson* v. *Ford, supra,* p. 196, and authorities there cited). The settled rule for the construction of such instruments is that all evidence must be excluded which is offered " to vary, explain or contradict a written instrument that was complete in itself and without ambiguity in its terms " since, when words in a deed " have a definite and precise meaning, it is not permissible to go elsewhere in search of conjecture in order to restrict or extend the meaning " (*Uihlein* v. *Matthews,* 172 N. Y. 154, 159, and cases cited). That is the first rule of construction, and in this case we need no other. The reservation in the 1919 Divine-Greenspan deed, in plain words of common use reserved from the conveyance, the " right and privilege " of damming the lake and its outlet, of impounding its waters " and raising and drawing the same ", subject to two conditions only, that is, that the waters should not be drawn lower than the lake's natural low-water mark or raised higher than its natural high-water mark. In that reservation there was no ambiguity whatever, and so it was not necessary or permissible in this lawsuit to look beyond the deed itself for evidence which might suggest a lesser meaning. Obviously, no outside evidence could properly be taken as to the parties' intent concerning the amount of water to be drawn off, since the reservation itself, in its references to low- and high-water marks, states its own precise quantitative limitations.

Plaintiff's contention that the reservation resulted in the creation not of any absolute right but of an easement appurtenant to the mill lot only, is not based on anything in the Divine-Greenspan deed itself, but on the terms of an entirely different deed made by the Divines in 1918 to one Le Roy. That conveyance passed title, from the Divines to Le Roy, to a piece of land lying south of the lake property and between it and the mill lot, and not including any part of either of those two parcels. The grantors Divine, then still owning the lake and its shores to the north of the lands deeded to Le Roy, and the mill lot to the south of Le Roy's parcel, excepted from the Le Roy grant the right to divert the outlet waters which ran from the lake and across the premises deeded to Le Roy, " for the use and operation of the mill and turning shop and other manufacturing purposes " on the mill lot adjoining the Le Roy

piece to the south, and the right to carry the diverted waters through Le Roy's land in pipes or conduits, etc. In other words, the Divines originally owned the lake and its shores (northerly piece), the mill lot (southerly piece) and a middle piece between those two, which middle piece they sold to Le Roy before they sold the lake to Greenspan and the mill lot to Evans. In the Le Roy deed, unlike the later Greenspan deed, the Divines reserved a true easement, expressly stated as being appurtenant to the mill lot, to run a pipe through the Le Roy lands to carry the waters from the Divines' lake to the Divines' mill lot. Clearly, that Divine-Le Roy exception or reservation set up a true easement appurtenant, but that deed is not in the chain of title (to the lake lands) which we are examining and is not mentioned or referred to in the later (1919) Divine-Greenspan reservation. As the Presiding Justice put it in his opinion for the Appellate Division (p. 57): "The Divines were not bound by the language of a separate easement, created by a different deed, and for a different purpose, at a time when they could have used all the water in the lake if they so desired". It would be fatuous to deny that the Divines in their 1919 reservation of water rights, were thinking of the easement they had already carved out of their grant to Le Roy, to carry waters over Le Roy's lands and for the Divine mill to the south. But, in the later Divine-Greenspan reservation, the reservees fettered themselves with no such limitations as are found in the Le Roy easement. In the Greenspan deed the Divines retained, and surely they had the right to reserve, an absolute, total and unlimited right to draw off, not for any particular purpose or for use at any particular place, the lake waters down to low-water mark. The Divine-Le Roy deed displays a background, and supplies a reason, for the Greenspan reservation, but, by settled rules, it cannot vary it. Even if we were to read the Divine-Greenspan deed as stating (and it does not state) the purpose or reason for the reservation, such a statement alone would not limit the otherwise absolute character of the reservation (see *Borst* v. *Empie*, 5 N. Y. 33, 40; *Lindenmuth* v. *Safe Harbor Water Power Corp.*, 309 Pa. 58).

Since we hold that the Divine-Greenspan reservation is non-ambiguous, it is unnecessary for us to discuss the question, as

to which the courts below differed, of the admissibility of certain testimony tending to fix the time when water was first sold by the Divines for use at defendant's hotel.

The views stated herein would, logically, lead to a conclusion, more favorable to defendant than the judgment appealed from, since our views would produce a holding that the right to draw off water in the lake is in defendant to the exclusion of plaintiff, and that there is no applicable limitation at all as to the purpose of such use. However, the appeal is by plaintiff alone, so we affirm.

The order should be affirmed, with costs. Of the questions certified to us by the Appellate Division, the first should be answered in the negative, the second not answered.

CONWAY, J. (dissenting). The view adopted by the court leads of necessity to the conclusion that plaintiff, the *owner* of Lake Sheldrake, has no right whatever to use the waters thereof, save, perhaps, for such relatively meagre purposes as boating and aesthetic enjoyment. By the decision now rendered, defendant is in effect accorded the exclusive right to draw water from the lake down to the natural low-water mark and thus is the only person who may draw any water from the lake.

We fear that, in focusing attention upon the reservation in question, the majority fails to give effect to the deed as a whole and overlooks the fact that the Divines, by the Greenspan deed, granted *some* water rights to plaintiff's predecessors in title. That deed conveyed to plaintiff's predecessors the lake and lands thereon abutting together with " whatever water rights the * * * [the Divines] may have in and to the said Sheldrake Pond *and the waters thereof,* that are not hereinafter reserved or excepted." (Emphasis supplied.) There then followed the disputed reservation quoted in the majority opinion, page 301. It is unusual that an owner of a lake should have no right to take and use any of its waters but it is more unusual, to say the least, that in the same deed there should appear a *reservation* now held to be coextensive with a *grant* therein contained. Before, if ever, such a construction be placed upon a deed, it should appear clear beyond peradventure that such was the purpose of the parties. The language quoted and the

absence from the reservation of phraseology compelling the conclusion that an *exclusive* right to draw water was *retained* by the grantors, persuade us that both parties were to have some right to draw and use the waters of the lake. This is made more clear by the fact that the Divines were the remote common grantors of both plaintiff and defendant.

The reservation adverts to *pipelines* "*which now exist* or may hereafter be constructed". (Emphasis supplied.) Those words and those above discussed present at least an ambiguity in that the language used is susceptible of more than one interpretation. That being so, we must invoke the well-entrenched rule of construction that a deed shall be read most favorably to the grantee, the plaintiff's predecessor. (*Matter of City of New York* [*Bronx Parkway*], 209 N. Y. 344, 347; *Blackman* v. *Striker*, 142 N. Y. 555, 560.) It is proper, too, in such a case to inquire as to the surrounding circumstances existing when the contract was entered into, the situation of the parties and the subject matter of the instrument. (*Wilson* v. *Ford*, 209 N. Y. 186, 196.) Both courts below considered such circumstances. Both parties agreed in both courts that the right was appurtenant to the Mill Lot. The defendant submitted to both courts a proposed conclusion of law that the right reserved was an "easement, by reservation, for the *benefit of the Mill Lot*" and conceded in her brief in the Appellate Division (p. 31) that it was "appurtenant" to the Mill Lot. The Appellate Division stated that the parties to the action agreed that the proper construction of the Greenspan deed was that an easement appurtenant to the Mill Lot was intended. That was the theory upon which the Appellate Division decided the case.

Proof was offered by both plaintiff and defendant, without objection by either, for the purpose of resolving the ambiguity and to establish the circumstances surrounding the execution of the deed. Parties may try a case upon their own theory and upon submission of their own evidence. The court must then decide the case upon such evidence. This was done by both the Trial Term and the Appellate Division and the parties may not change their position thereafter, and we do not think that this court may now disregard the theory upon which the case was tried, the proof submitted by the parties, and the

affirmed findings below. In effect there was a concession by the parties that there was ambiguity in the deed and that the surrounding circumstances were relevant and material. We do not think that it is permissible now to construe the deed without reference to the proof on the trial. As we said in *Flora* v. *Carbean* (38 N. Y. 111, 113): " It is not competent for the respondent to insist on this appeal that the evidence offered to show that the land of the plaintiff over which the right of way is claimed by the father of the defendant, belonged to Van Rensselaer when the use of the way began, was inadmissible. It was received, and, being received, the plaintiff had a right to rely upon it. If testimony tending to establish a material fact, although incompetent in its nature, is received without objection, or if, as in this case, it being objected to, is received notwithstanding the objection, *the party has a right to insist upon the facts shown thereby.*" (Emphasis supplied.) (See to the same effect, *Matter of Findlay,* 253 N. Y. 1, 11; *Witmark* v. *New York Elevated R. R. Co.,* 149 N. Y. 393, 399; *Crane* v. *Powell,* 139 N. Y. 379, 384–385; *Diaz* v. *United States,* 223 U. S. 442, 450.)

As was said by the Appellate Division, the existing pipelines mentioned in the reservation obviously are those extending from the lake to the mill operated by the Divines upon the " Mill Lot " at the time of the giving of the deed. Thus, the reservation does, in effect, make reference to the mill. Also noted by the Appellate Division was the fact that the Divines retained no lands abutting on the lake. The Mill Lot while not abutting was in close proximity, with pipes connecting it to the lake. Both Appellate Division and Trial Term found, and we agree, that the rights reserved were reserved in connection with and were appurtenant to the Mill Lot. And the majority too state that, " Undoubtedly, the Divines made the 1919 reservation of the Loch Sheldrake water rights, because of their then ownership and operation of the mill  *  *  *."

The Appellate Division in its opinion, which is referred to in the order under review, observed that the Divines in making the reservation had as their purpose the retention of water rights in conformity with then existing uses. The Divines were engaged at the time of the conveyance in selling some water,

to the Evans Hotel but the water so sold was merely tail race water, i.e., water discharged after use in the mill. Hence, to continue that use, the Divines needed only to reserve a right to draw such water as was required for their mill. And, that, in light of the circumstances, was the true purpose of the reservation and the reason for the mention of the pipelines, quoted (*supra*).

The situation is no different from that which would obtain had the deed been more artfully drawn and expressly recited that the Divines reserved a right to draw water for the mill. In that case and in the absence of a clear expression of a contrary intent, mention of the mill would be properly understood as fixing the quantity of water which could be drawn and not as a limitation upon the use to which it could be put or the place in which it could be used. Numerous authorities to that effect are cited in the Appellate Division opinion. Although the right reserved thus be of the kind commonly considered appurtenant to a dominant tenement or as in some manner connected therewith, the same rule should be applicable in reason and on principle since, where a quantitative restriction is thus established, limitations as to method or place of use of the water needlessly restrict benefits otherwise redounding to the holder of the water right and to the community as a whole since the absence of such limitations does not enlarge the burden imposed upon those subject to the right. (See Gould on Waters [3d ed.], § 320, p. 612; 3 Farnham on Waters and Water Rights, § 764, p. 2286; *Comstock* v. *Johnson,* 46 N. Y. 615.) Thus, it is written in Gould on Waters (§ 320): "When the easement is of a certain quantity of water, the owner is not bound to use it in a particular manner, though the purpose for which it is used is mentioned in the grant. He may use the water in a different manner or at a different place, or increase the capacity of the machinery which is propelled by it, without affecting his right, if the quantity used is not increased and the change does not prejudice the rights of others. This rule applies both to reservations and grants."

Consequently, we are of the view that defendant here is entitled to draw that quantity of water customarily drawn by the Divines at the time of the giving of the Greenspan deed.

That quantity may be used anywhere and for any purpose, as we have indicated, and it is thus properly used in connection with the hotel.

*Defendant's* right to that quantity of water is, of course, a paramount one but *plaintiff* is entitled to draw and use waters of the lake in a manner not inconsistent therewith. The reference in the reservation to the natural high- and low-water marks of the lake merely sets the outer limits within which the right to draw and impound water may be exercised. It may very well be (a) that the quantity of water to which defendant is entitled is less than that which lies between the natural high- and low-water marks or (b) that there may be periods, seasonal or otherwise, when defendant has neither need nor desire to draw all the water to which she is entitled, whatever quantity that may be. To hold that the reservation accords to defendant an exclusive and absolute right to draw water from the lake is, in our view, unwarranted by and is indeed contrary to the language of the conveyance, the intent of the parties and settled rules of construction.

Insofar as we believe that the right of defendant is *paramount* as to the amount of water customarily drawn by the Divines for use on the Mill Lot at the time of the delivery of the Greenspan deed but not *exclusive*, we think that the order of the Appellate Division should be modified. We think that such amount of water may properly be determined upon the trial of the issues remaining in the action and still to be tried under the stipulation entered into by the parties under section 443 of the Civil Practice Act.

The order appealed from should be modified in accordance with this opinion and, as so modified, affirmed, with costs. The first question should be answered in the affirmative, the second question not answered.

DYE, FROESSEL and VAN VOORHIS, JJ., concur with DESMOND, J.; CONWAY, J., dissents in opinion in which LEWIS, Ch. J., and FULD, J., concur.

Order affirmed, etc.