## BURR vs. MILLS.

Where the owner of land conveys away a portion of his premises, a part of which at the time of the conveyance are flowed by a *mill dam* belonging to him, and makes no reservation of the right to continue to flow the land, he looses the right, and cannot set up *an implied reservation.*

If the owner had *sold and conveyed the mill* to a third person, it would have been otherwise; then the right to flow the land would have passed as an incident to the purchaser of the mill, and could not have been cut off by the grantor.

A clause in a deed in these words: " Provided, nevertheless, that nothing above mentioned shall be so construed as to injure *the privileges heretofore enjoyed* with regard to raising water for the benefit of *my saw mill* where it now stands, or others if erected at or near the same place," was *held* in this case to be *a reservation commensurate* with the grantor's estate in the whole premises previous to the conveyance, and was *not limited to his own life;* and that a *devise* subsequently made by such grantor to his grandchildren of the east half of the *mill lot* together *with all the rights appurtenant to the same,* mill privileges, &c., passed the *right to flow* reserved in the deed.

THIS was an action on the case, tried at the Montgomery circuit in May, 1837, before the Hon. JOHN WILLARD one of the circuit judges.

The suit was brought for the flowing of lands of the plaintiff, and obstructing the operations of a mill owned by him, by means of a dam erected by the defendant across a stream upon which the mill of the plaintiff is situate. The plaintiff *James Burr,* showed title to *one portion* of the premises, part of which was overflowed, under a deed executed to him by *Nathaniel Burr,* bearing date 27th April, 1801; and to *another portion,* part of which was *also overflowed,* under a deed executed to him by *Nathan Burr,* bearing date 10th March, 1809, containing the following *reservation:* " Reserving, however, out of the premises above conveyed *a right of flowing* such part of the said premises as may be necessary for a mill pond at or near the place where the *old mill* stood, by erecting a dam at or near the old dam, for the benefit of mills; if erected, the water not to be raised more than to be as high as a large rock in the old pond or creek." The *mill* of the plaintiff was erected about

the year 1823, *on the premises conveyed to him by Nathan Burr*. In 1835 the father of the defendant erected a mill and dam on the same stream on which the plaintiff's mill was situate, *below the plaintiff's mill*, which dam raised the water in the stream and set it back upon the wheels of the plaintiff's mill, so as entirely to render the mill useless, and also *overflowed* about three-fourths of an acre, *a portion of the premises* conveyed to the plaintiff by *Nathaniel Burr*, and rendered it useless. The father of the defendant died in 1836, and the defendant succeeded him as his heir at law, in the possession of the mill built in 1835. On this evidence and proof of the damage sustained, the plaintiff rested. The defendant then gave in evidence a deed from *Nathaniel Burr* to *Nathan Burr*, bearing date 27th April, 1801, conveying certain premises, *including the premises* subsequently conveyed by Nathan Burr to the plaintiff, containing the following *proviso :* " provided, nevertheless, that nothing above mentioned shall be so construed as to injure the privileges heretofore enjoyed with regard to raising water *for the benefit of my saw mill* where it now stands or *others* if erected at or *near* the same place." In 1824 *Nathaniel Burr* died, having previously by his last will and testament *devised* to four grandchildren in fee, the east half of the mill lot, as commonly called, *together with all the rights appurtenant to the same mill, privileges, &c.*, which title thus devised, subsequently to wit, in 1835, became vested in the father of the defendant. It was admitted that at the time of the conveyance from Nathaniel Burr to Nathan Burr, to wit, in 1801, Nathaniel Burr had a saw mill and dam on the premises devised by him to his grandchildren, *near* where the defendant's mill and dam now are; that the same was carried off by a freshet in 1804; that Nathaniel Burr made preparations to *rebuild* the same before his death ; that after his death, and when the plaintiff was about building his mill, the plaintiff said that the right to build the dam belonged to the *devisees* of Nathaniel Burr, but that they would never agree and build the dam. The judge ruled that the defendant had not shown title to erect and keep up the dam and to overflow *any part* of the lands

of the plaintiff; and the jury under his direction found a verdict for the plaintiff. The defendant moves for a new trial.

*J. W. Cady*, for the defendant.

*D. Cady*, for the plaintiff.

*By the Court*, Cowen, J. With regard to that part of the premises conveyed by Nathaniel Burr to the plaintiff in 1801, the deed reserved no right of flowing it. A small portion of this is penetrated by a turn of the creek, where the water is raised so as to injure the land. The defendant is clearly liable for this injury. After having sold the land absolutely, Nathaniel Burr, the testator, had no right of flowing left, which he could devise to his four grandchildren. It can make no difference that there was then a dam built which flowed this land. If a man convey land which is covered by his mill pond, without any reservation, he loses his right to flow it. There is no room for implied reservation. A man makes a lane across one farm to another, which he is accustomed to use as a way; he then conveys the former, without reserving a right of way; it is clearly gone. A man cannot, after he has absolutely conveyed away his land, still retain the use of it for any purpose, without an express reservation. The flowing or the way are but modes of use, and a grantor might as well claim to plough and crop his land.

If the mill had first been sold by Nathaniel Burr to another, it would have been different; for the right of flow would have passed to that other as an incident and could not then be cut off by the grantor. This distinction is plainly derivable from authorities which will be presently considered.

The judge in his charge also denied the right of the defendant to flow those parts of the creek which lie within the boundaries of the land conveyed in 1801 to Nathan Burr, and by him in 1809 to the plaintiff. These deeds both reserved the right of flowing; but the material clause

Burr v. Mills.

to be considered is that in the deed of 1801, from Nathaniel Burr, who, it is insisted by the defendant, reserved by that deed an hereditary easement or right of flow, which by will he transmitted to his grandchildren, from whom the defendant derived his title. The words, after conveying in the usual form, are, " provided nevertheless that nothing above mentioned shall be so construed as to injure the privileges heretofore enjoyed, with regard to raising water for the benefit of my saw mill where it now stands, or others if erected at or near the same place." It is insisted by the plaintiff's counsel, 1. That this is a reservation but for the life of the grantor; and 2. If in fee, yet the easement did not pass by the grantor's devise to his grandchildren of the mill lot, " together with the rights appurtenant to the same, mill privileges, &c."

1. If the clause in the deed were a reservation to the grantor, he being named as *the person* to whom the easement was reserved, then he would have had but a life estate ; and such are the cases in the book cited to this point against the defendant. 19 Vin. Abr. 119, 120 and 121. (*N*), pl. 2, 3, 4, 7. The book says, if the rent be reserved to *him*, or to *him*, his *executors* and *assigns*, his heir shall not have the rent, and it shall determine by his death. It is confined *by the words* to the lessor, &c. But the same book says, if such a reservation be general, as a rent *during the term* without saying more, the law will say this shall go to the lessor's heirs and assigns. Id. 119, (*N*), pl. 1. And to this the book cites Co. Litt. 47, and several other authorities.

The same distinction holds of an exception. Thus it is said in Shep. Touch. 100 : " If one grant lands in fee, excepting the trees or any other thing to the *grantor*, without saying *and to his heirs*, by this exception, the thing excepted is severed only for the life of the grantor, and then it shall pass with the rest of the thing granted. But if the thing be excepted *indefinitely*, without saying for the life of the grantor, &c., nor how long, this shall be taken to be an exception during the estate." Again, " By an exception, the thing excepted is taken wholly out of the grant, and is no parcel of the thing granted." 4 Bart. Conv. 400. " That

which is excepted out of the general words is in the same
case as if it had never been touched." Plowd. 361. Per
Archer, J. in *Bosworth* v. *Farrand*, Carter's R. 99 ; and
*vid.* Dyer, 264, *b*. There can be no doubt that Nathaniel
Burr, by the clause in his deed to Nathan Burr, intended to
save the whole right which he had to flow this land previ-
ous to the giving of the deed. That was a right in fee.
The amount is, " Nothing shall be so construed as to injure
the privilege heretofore enjoyed of flowing for the benefit of
my saw mill." That privilege was absolutely to him and
his heirs and assigns. He might hold, assign or devise it.
It appears to me, then, that whether we consider this as the
reservation of a thing *de novo*, or as an exception, the re-
sult must be the same. It is not tied up to the person of
the grantor. The privilege is to remain untouched. The
words, " my saw mill," are merely descriptive of the privi-
lege, as showing where it is to be exercised. I think the
reservation was in law commensurate with the grantor's
previous estate ; in other words, a fee, within the distinction
laid down in the books. Suppose Nathaniel Burr had
sold all his land, with an express exception of the mill
without any thing more, the right to a necessary flow for
the use of the mill would have been reserved as an inci-
dent. *Nicholas* v. *Chamberlain*, which will be hereafter
noticed, shows this. In *Jackson ex dem. Hasbrouck* v. *Ver-
milyea*, 6 Cowen, 677, it was held that the express exception
of a mill site was impliedly an exception of so much land
as is necessary for the mill pond, and for erecting and carry-
ing on the business of a mill.

  2. The next question is, whether the devise of the *land
and mill, with the appurtenances*, &c., shall carry the ease-
ment to the devisees ; and it is very clear that it shall.
The right to use the water in a certain way, though it be
only convenient for a building, is an appurtenance, and shall
pass by a grant of the building, *cum pertinentiis*. Thus, in
*Nicholas* v. *Chamberlain*, Cro. Jac. 121, " It was held by
all the court upon demurrer, that if one erect a house and
build a conduit thereto in another part of his land, and con-
vey water by pipes to the house, and afterward sell the

Burr v. Mills.

house *with the appurtenances*, excepting the land, or sell the land to another, reserving to himself the house, the conduit and pipes pass with the house ; because it is necessary, *et quasi appendant thereto ;* and he shall have liberty by law to dig in the land for amending the pipes, or making them new, as the case may require. So it is if a lessee for years of a house and land erect a conduit upon the land ; and, after the term determines, the lessor occupies them together for a time, and afterwards sells the house *with the appurtenances* to one, and the land to another, the vendee shall have the conduit and pipes, and liberty to amend them." If such be the effect of a grant, *a fortiori* shall it be so of a devise. In *Whitney* v. *Olney*, 3 Mason, 280, a devise of a mill *with the appurtenances*, was held to carry all the land usually occupied with the mill, although land cannot be said in law to be appurtenant to land. And see several cases cited id. 282.

In the case at bar, the grantor and testator had occupied the premises for a *saw mill* from before the time of deeding till 1804, when the dam was carried away by a flood. He prepared to rebuild before his death. But the land finally coming to the defendant, he substituted a *grist mill.* This he had a right to do by the express terms of the reservation ; and of that right the plaintiff was fully aware when his deer skin mill was erected some fourteen years before the trial. His only hope, as he said, was from the disagreement of the devisees, the then owners.

The result of our opinion is that a new trial must be granted ; for although the defendant had a right to flow that portion of the premises which were granted by *Nathan Burr* to the plaintiff, he had no right to flow the other portion of the plaintiff's premises which were granted to him by *Nathaniel Burr.* The damages allowed by the jury for the flowing of the premises last mentioned must have been trifling compared with what probably were allowed for the injury to the plaintiff's mill, and the defendant therefore is entitled to a new trial.

New trial granted.