Nelson, Ch. J.
The clause in the lease under which the present dispute arises is as follows: “ And lastly, it is mutually consented, covenanted and agreed, by and between the parties to these presents, that if at any time hereafter, it shall so happen that the party of the second part, his executors, administrators, or assigns, should be minded or inclined to sell or dispose of the estate in the hereby demised premises, and the buildings and improvements to be erected and made thereon, that then and in every such case, it shall and may be lawful for them so to do, provided they shall first obtain a certificate in writing under the hand and seal of the said. party of the first part, his heirs or assigns, signifying his or their consent and approbation to such sale or assignment, and shall and will also first offer and give the preemption or refusal of buying or purchasing the same unto the party aforesaid of the first part, his heirs and assigns; and on every such sale or assignment, shall pay to the party of the first part, his heirs or assigns, a tenth part of the purchase or consideration money, for which the said premises are so sold or assigned.”
I agree with the court below that the clause in question, taken in connexion with other parts of the lease, must be regarded as embracing a covenant as well as a condition, so as to give the landlord an election to proceed» either by an action to recover damages for the breach, or by ejectment to enforce the forfeiture and regain possession of the estate. The form of the rem *255 edy, therefore, is unobjectionable, and the only material or difficult question in the case is, whether a sufficient breach has been shown to entitle the complainant to the tenth sales, as these covenants and conditions, though in restraint of alienation, have been repeatedly held lawful and binding between landlord and tenant. (Jackson v. Silvernail, 15 Johns. Rep. 278; Jackson v. Shute, 18 id. 174; Jackson v. Kip, 3 Wend. 230.)
Covenants of this description, however, have always been construed by courts of law with the utmost jealousy, to prevent the restraint from going beyond the express stipulation of the parties. We are bound therefore-to look narrowly into, the one in question, and see if the complainant has brought her case within the terms and import of it upon this restricted interpretation.
A few cases upon the kindred covenant.“not to assign or underlet” without the license of the landlord, will serve to illustrate the general principle that should govern us; and they will be found to hold one uniform language.
In the leading case of Crusoe v. Bugby, (3 Wils. 234, 2 Wm. Bl. 776,) a lessee for twenty-one years covenanted not to assign, transfer or set over, or otherwise do or put away the premises or any part thereof” without permission ; and afterwards made a lease for fourteen years. It was held upon full consideration that* this was no breach, on the ground that the demise of the fourteen years was an under lease, and not an assignment. And it was observed that the courts held a strict hand over these covenants and conditions for defeating leases; that the landlord might have provided against a change of possession, as well as against an assignment; but that he had not done so by words which admit of no other meaning; that “ assign, transfer and set over,” were mere words of assignment; and that “ otherwise do or put away” meant any other mode of getting rid of the whole interest, and could not be confined to the making of an under lease.
In the case of Doe, ex dem. Pitt, v. Hogg, (4 Dowl. & Ryl. 226,) the words were, “ let, set, assign, transfer, set over, or otherwise part with the said messuage” &c. The lease was deposited with a creditor as security for a debt, who took pos *256 session of the premises, and continued in the possession and occupation of the same at the time the ejectment was brought for a forfeiture; the lessor insisting that the transaction was within the words “otherwise fart with” Sec. But the court were clearly of opinion that the effect of the covenant was only to restrain the lessee from completély alienating the legal interest, to the prejudice of the landlord, without his consent, and that there had not been such an alienation; that the words otherwise fart with, meant “ assign,” and that there had been no assignment of the legal interest.
So it has been held that the devise of a term by the lessee is not a breach of the covenant against assigning. (Fox v. Swan, Styles, 482; and per Bayley J. in Doe, ex dem. Goodbehere, v. Bevan, 3 Maule & Selw. 353; Platt On Cov. 414.) Nor is an assignment by sale on execution a breach of this covenant, even where the judgment is entered up on a warrant of attorney, unless given for the express purpose of getting possession of the term in fraud of the lessor. (Doe, ex dem. Mitchinson, v. Carter, 8 T. R. 57, 300.) So of an assignment which is void, being of itself an act of bankruptcy. (Doe, ex dem. Lloyd, v. Powell and others, 5 Barn. & Cress. 308.) The party seeking to take advantage of the breach must show an actual assignment; (Doe v. Payne, 1 Stark Rep. 86; Platt On Cov. 407;) and in Church v. Brown, (15 Ves. 265,) Loi’d Eldon laid down the proposition that the tenant might, by an agreement which did not amount to an assignment, put another person into possession.
These authorities, and many others that might be added, sufficiently exemplify the very great strictness with which covenants and conditions tending to clog alienation, and to tie up leasehold estates in the hands of the lessees, are construed, even in that country where restraints upon the transmission of property are much more favorably regarded than here. And they demonstrate, it appears to me, beyond all doubt, that before a breach can be predicated upon the words of the covenant in this case, such a sale or assignment of the term must be shown as shall operate to divest the vendor or assignor of the whole of his legal *257 interest or estate in the same. Any thing short of this would be carrying the restraint beyond the express stipulation of the parties. For the words sale or assignment, technically speaking, mean the actual transfer of the legal interest and estate; not a mere equitable right to such transfer which might be enforced in a court of equity. (Edwards v. The Farmer's Fire Ins. & Loan Co., 21 Wend. 293 to 295, and the cases there cited ; see also Jackson v. Silvernail, 15 Johns. Rep. 278.)
It was insisted upon the argument that the covenant in this case to pay one-tenth should not be regarded as a covenant in restraint of alienation, and that therefore it could not properly be subjected to the severe rules of interpretation above noticed. It is not to be denied, however, that such is the direct tendency and effect of the covenant; as, in the case before us, ten successive sales or' assignments would sink the whole value of the leasehold estate in the hands of the several owners. These tenth sales are in the nature of the ancient fines Upon alienation incident to the military tenures, which were abolished as one of the feudal burdens upon real property by the statute of 12 Car. 2; and for aught I can see the former clog the transmission of the property from hand to hand as heavily as the latter. I do not understand that this attribute was denied in Jackson v. Shute, (18 Johns. Rep. 174,) where the covenant was a good deal discussed, and its legality established.
But although I am satisfied, upon a proper understanding of the language of the covenant in question, that an actual transfer of the whole interest of the tenant is essential to make out a breach, and is to be taken as the condition upon which the payment of the tenth sales is made to depend, yet I am bound to say the law is not so powerless and neglectful of the rights of the landlord as to permit the tenant to evade the force and effect of the covenant by indirection and fraud. And if it should be satisfactorily shown that the several contracts of sale were fulfilled, and the conveyances of the legal interest withheld for the mere purpose of defeating the tenth sales, and in fraud of the condition, it would become the duty of the court, in order to frustrate the fraudulent contrivance, to look at the real object *258 and intent of the parties to the contract of sale, and pronounce upon it accordingly. (Doe ex dem. Mitchinson, v. Carter, 8 T. R. 300; Co. Litt. 223,6; Platt On Cov. 411.) Under such a state of the case, in the language of the court in Doe ex dem. Mitchinson v. Carter, we would say, “ it would be ridiculous to suppose that a court of justice could not see, through such a flimsy pretext.” And though the tenant had not in terms assigned the lease, yet having done that which was equivalent, we would apply the maxim, quando aliquid prokibetur fieri ex directo, prokibetur et per obliquum.
The fraudulent withholding of the conveyances of the legal title to the respective purchasers, by the defendant in the court below, for the purpose of defeating the payment in this case, is distinctly set up in the bill as a ground of relief; but is as distinctly and positively denied by the answer. The onus of proving the fraud affirmatively, therefore, devolved upon the complainant. I have accordingly looked into the proofs to see if it has been established, and am bound to say it has not There is evidence enough of the resistance of this demand by the defendant, and of his determination to stand out against it to the end of the law: but none that the payments or the execution of the legal conveyances have been or are postponed and held back for the purpose of aiding in this resistance.
I cannot doubt, moreover, if it is true as alleged that the defendant has promised to pay these tenth sales, but that a perfect remedy exists at law upon that ground, and that the circuit judge erred in nonsuiting the plaintiff in the action heretofore brought, founded upon that promise. There was at least a sufficient existing equitable right, under the circumstances, to afford a valid consideration for the promise.
I think' there is no ground for interfering with the decree of the chancellor, and shall therefore vote to affirm it.
Root, Senator, also delivered an opinion in favor of affirming the chancellor’s decree.
*259 On the question being put “Shall this decree be reversed?” the members of the court voted as follows:
For reversal: Senators Mitchell, Porter and Works—3.
For affirmance: The President, The Chief Justice, and Senators Bartlit, Bockee, Denniston, Deyo, Dixon,
Ely, Foster, Lawrence, Platt, Root, Scott, Scovil, and Varney—15,
Decree affirmed.