# PRACTICE REPORTS.

## SUPREME COURT.

### CLARENCE H. SCHRYMSER agt. ROYAL PHELPS.

*Easement — Right of way — Rule of law as to.*

Where, after the owner of two adjoining premises, one being an extension in the rear of the other, had established a communication between the front and rear buildings, with an entrance thereto through the front building, the two buildings were sold upon foreclosure of mortgages, the defendant purchasing the front building and the plaintiff that in the rear, and then the defendant closed up the entrance in the hallway between the premises purchased by him and the rear building adjoining:

*Held* (in a suit by plaintiff for relief), that the case is not one entitling plaintiff to equitable interference.

*In Equity, October*, 1881.

*John N. Bryan, Francis M. Scott* and *D. Noble Ronan*, for plaintiff.

*George De Forest Lord*, for defendant.

LARREMORE, *J.* — On March 9, 1864, Michael Dillon was seized in fee simple of certain real estate in the city of New York, known by the No. 29 Broadway and Nos. 2 and 4 Morris street. There were then on these premises four buildings, viz.: One on Broadway, about twenty-nine feet nine inches and about fifty-eight feet on Morris street; another abutting the same on the west and extending westwardly about fifty-eight feet eight inches, called the extension; and two others west of the extension, called Nos. 2 and 4 Morris street, being each twenty-five feet wide. A hallway ran from the front building to the extension, in which a swinging door was hung.

On the date last mentioned, Dillon and wife executed two mortgages upon the entire premises, for the sums of $40,000

and $10,000, respectively, which were in November, 1868, assigned to the Mutual Life Insurance Company of New York. Prior to such assignment, and on March 9, 1864, the premises had been conveyed to Paul N. Spofford, subject to said mortgages, who thereupon made several alterations in the interior of the premises, and established a communication between the front and rear buildings, with an entrance thereto from Broadway.

On June 6, 1873, in consideration of $25,000 paid by Spofford, the Mutual Life Insurance Company released from the lien of said mortgages the front premises by the following description : " All that part of the said mortgaged premises beginning at the corner formed by the intersection of the westerly line of Broadway with the northerly line of Morris street ; running thence westerly, along the northerly line of Morris street, about fifty-eight feet to an angle in the wall formed by the division wall between the premises now being described and a building in the rear forming an extension thereof ; thence running northwardly, along said division wall, thirty feet, more or less, to the northerly line of said mortgaged premises and land formerly of Garret Van Horne ; thence running eastwardly, along said last mentioned land, to the westerly line of Broadway ; and thence southwardly along the same, twenty-nine feet nine inches to the point or place of beginning," as shown on a diagram annexed, and being that portion of the said mortgaged premises properly known as No. 29 Broadway ; not, however, including the rear building or extension thereof.

Spofford then mortgaged the premises thus released, and substantially by the same description, for $50,000, to the estate of Richard Adams. This mortgage was subsequently foreclosed and the premises therein described were sold to the defendant. The Dillon mortgages were also foreclosed and the premises covered thereby, except the portion released, were purchased by the Mutual Life Insurance Company, who thereafter conveyed the same to the plaintiff. The defend-

ant, on or about February 13, 1880, closed up the entrance in the hallway between the premises purchased by him and the rear building adjoining the same. For this plaintiff asks relief, for a removal of the obstructions and restoration of the entrance in dispute, for injunctive process and damages.

The legal questions involved in this case have been the subject of recent examination and adjudication. In *Outerbridge* agt. *Phelps* (58 *How.*, 77), an elaborate review of the authorities is entered into and a conclusion reached adverse to the application of a tenant of Spofford for relief similar to that herein sought. The only apparent distinction between that and the present suit is found in the fact that the claim of Outerbridge was based on a grant subsequent to that of Phelps. Decisions of courts of competent and co-ordinate jurisdiction should be respected and followed, unless opposed to the rulings of an appellate tribunal.

What have we here, then, as a fresh subject of litigation? The plaintiff as a subsequent purchaser of a part of the premises originally mortgaged, claiming a dominant easement or servitude upon that portion thereof previously conveyed to the defendant. This right is not claimed by actual prescription, but by implication and reservation. To this point the candor and ability of counsel have narrowed the contest. Adopting this view we are relieved of the question as to the division wall, any alleged encroachment upon which by the defendant is not within the grounds of equitable interference.

Tested by the authorities of this state, the plaintiff cannot find a warrant for his claim. *Burr* agt. *Mills* (21 *Wend.*, 290) is fatal to the doctrine of implied reservation.

*Lampman* agt. *Milks* (21 *N. Y.*, 505) was an extreme case, in which the plaintiff's land would have become valueless if the overflow of water had been allowed. This fact must not be overlooked in the application of the principles therein enunciated, which have not been extended by any subsequent authority (*see Butterworth* agt. *Crawford*, 46 *N. Y.*, 349). But applying the rule thus laid down in its broadest

sense, it will not be found conclusive as to defendant's rights.

Granted, then, that where the owner of an entire tenement sells a portion thereof, the purchaser takes the same with all the benefits and burdens which appear at the time of the sale to belong to it as between it and the property retained by the grantor; that whatever is in use for the portion sold as an incident or appurtenance passes with it (*Huttemeir* agt. *Albro*, 18 *N. Y.*, 48), and that this rule is declared to be reciprocal as between grantor and grantee. But in what sense can the defendant be said to be a grantee of Spofford? Surely not by operation of law in purchasing the premises in question on the foreclosure of a mortgage given by him, in which no reference to or any reservation of any easement is made. Nor can the theory be upheld that the assignee of the Dillon mortgages had any other or greater interest in the premises covered by them than the mortgagee originally had. There was no reservation in the release of the portion subsequently purchased by the defendant, and unless the easement claimed was apparent and necessary, it did not pass as an incident or appurtenant.

Notwithstanding the extensive alterations of the entire premises made by Spofford with a view to their greater convenience and profit, no grantee of his is chargeable with notice thereof as shown by the record. Nor did this action on his part create such a severance of the premises as to raise the presumption of an easement as against this defendant, who does not claim through him. For this reason it would appear, in the absence of proof of any ancient right, that the question of an easement apparent and necessary is unimportant. But the line of argument on this point is inviting, and claims some consideration in the ultimate disposition of the case.

All that plaintiff asks is a continuous right of way or entrance, through the main hall of defendant's premises, to Broadway. But a right of way belongs to the class of dis-

continuous easements (*Parsons* agt. *Johnson*, 68 *N. Y.*, 64; *Fetters* agt. *Humphreys*, 3 *C. E. Green*, 261; *Worthington* agt. *Gimson*, 6 *Jurs.*, *N. S.*, 1053). It is not pretended that the plaintiff has or can have no entrance to his premises except in the manner claimed, nor that any absolute necessity supports such claim, but that its maintenance is necessary for the full enjoyment of his property (*Simmons* agt. *Cloonan*, 81 *N. Y.*, 557). Unless this later authority is entirely misunderstood, it is but a reaffirmation of previous adjudications upon the point in dispute.

To plaintiff's demand that, with a right of entrance from Broadway, his property would be doubly enhanced in rental value, the defendant replies: "You have no such prescriptive right; I have been neither party nor privy to such an implied right; I cannot consent that my property shall be burdened forever with a servitude that yields me no benefit and fixes a perpetual incumbrance upon it."

The facts disclosed do not establish a case for equitable interference, and the defendant is entitled to judgment in his favor.

---

## SUPREME COURT.

The People of the State of New York *ex rel.* Charles Rosekrans agt. Joseph B. Carr, secretary of state of the state of New York.

*Office and officer — Surrogate of New York city and county — Term of office.*

By the Constitution of 1846 (*art.* 6, *sec.* 14), the office of county judge for every county in the state, except the city and county of New York, was created, and the person elected thereto was to hold it for four years. The same section and article of the Constitution, without prescribing the term and duration of the office of surrogate, provided: "In counties having a population exceeding forty thousand, the legislature may provide for the election of a separate officer to perform the duties of surrogate." By chapter 448 of the Laws of 1847, the legislature provided for the election of surrogate (also a recorder) of the city